The Honorable, the Judges, the United States Court of Appeals for the Fourth Circuit. You may be seated. Mr. Boyle, when you're ready. May it please the Court. My name is Ellis Boyle. I am here as counsel for the Plaintiff Appellant Charles Short on behalf of the Estate of Victoria Short. With the Court's permission, I would like to reserve four minutes for rebuttal. We would respectfully ask that this Court... On that front, since you didn't, the first time I ever argued here as an appellant, I didn't realize that's already been taken out of your time. So the time you're seeing is already, we've already deducted your rebuttal time. Because that burned me the first time I argued as an appellant in this Court. Thank you, Your Honor. We would like to respectfully ask that this Court reverse the District Court's dismissal of Mr. Short's complaint against the Sheriff's defendants. We're here because Sergeant Morgan was deliberately indifferent to Victoria Short's serious medical need of an over and known suicide risk, which caused her to die. And the District Court dismissed on judgment on the pleadings after the parties had fully done discovery and briefed summary judgment, which was pending. This Court should reverse for two reasons. First, under the 2015 Supreme Court Kingsley v. Hendrickson case, this Court should apply the objective test to Ms. Short's claim as a pretrial detainee making a deliberate indifference of serious medical need claim. And second, this Court should apply the recent holding from May of this year, its own holding in the Stevens v. Holler case. The Court should reverse for either or both of those reasons, and in doing so, remand so that this case may proceed to summary judgment or trial, and also allow the Monell claim to be revived against the Sheriff and the state law claims against the individual defendants. Do you think we really need to get to Kingsley in this case? It seems like the District Court made a whole lot of factual findings, whether you use objective or subjective findings. I mean, do you believe you have to do a – I'm not saying you're wrong about it. I'm saying do you need to get there? Is that your argument? This is on the pleadings, right? Yes, Your Honor. It seems like it made a lot of factual findings. Well, they relied on – the nurse didn't do it because – where does that come from? I mean, those are findings. I don't see how you can see that from the pleadings. I think this Court could easily rely on the Stevens v. Holler standard, and I think several times this Court has been presented with the opportunity to consider Kingsley with a pretrial detainee claim for deliberate indifference since 2015, and every time thus far, it hasn't had to reach it. So it is still an open question. I believe Your Honor is correct that the – even if you apply the Eighth Amendment subject of standard here from Farmer v. Brennan, that it would still be well within the Court's discretion to reverse. Or that we could just say, see Stevens, try again, right? I mean, like we literally could resolve this appeal by just saying, see our opinion in Stevens. Respectfully, I believe you could, Your Honor, and I don't want there to be lost the opportunity. However, this Kingsley issue for pretrial detainees has been bouncing around in this circuit ever since the Dilworth v. Adams case in 2016, and I think really this Court just needs to apply Dilworth in many ways. Can I just ask to clear out some procedural underbrush that seems like makes this case harder than it needed to be? Am I right that – well, so you mentioned again that the district court granted 12C after summary judgment had been fully briefed. You're not, as I understand, arguing that the district court – I mean, maybe that was a bad way to run a railroad, but you're not arguing that the district court was without legal authority to grant 12C relief just because summary judgment motions were pending, right? I agree that the district court had the discretion to go back and look at 12C after summary – Well, at some point, the court – I mean, there was a pending motion. At some point, the court has to rule on a pending motion, right? I believe that's probably true, Your Honor, for procedural – Like, let's say counterfactually your client ended up winning this case. The defendants could appeal on the grounds of the district court literally never ruled on our motion to dismiss for failure to state a claim, right? Well, I believe, Your Honor, at some point, procedural motions for the pleadings become moot if we went to trial. I don't believe that would be a fact. And so descriptively speaking, I think I know the answers to these, but just to clarify, you did not move to amend your complaint after learning that some of the factual allegations in the original complaint were wrong, right? That is correct. After the nurses denied those claims, we did not amend. And I'm not saying we couldn't have, and I suspect if we are remanded, we will. And then secondly, as I look at the rules, you could have moved to amend your complaint even after the district court dismissed it for failure to state a claim, right? The rules – the Rule 15 standard even allows you to amend your complaint after judgment. So you could have moved to amend after that, and you also didn't, right? I believe that's correct, Your Honor. We did make a motion to reconsider. That's different from moving to amend your complaint. It is, Your Honor. And at this point, do you agree procedurally that they're right, that in ruling on a Rule 12c motion, the district court only looks at the complaint? They don't look at evidence that came out during the summary judgment proceedings? Yes, Your Honor. 12c – well, they look at the pleadings, not just the complaint, Your Honor. No, fair enough. But at one point, you were saying you should look at this evidence that was in our summary judgment papers. That's not how we do motions to judgment on the pleadings, right? That is correct, Your Honor. That was more of a fairness argument. And then I promised last one of these. Am I correct that you have not independently made an argument that the district court should be reversed for denying your motion to reconsider? I don't see any argument in your appellate brief that the district court abused its discretion in denying the motion to reconsider. Is that right? I would say that's fair, Your Honor, although the motion to reconsider somewhat collapses into the 12c motion. So I don't know that that's – You should imagine a separate argument. The district – so, I mean, look, in the motion to reconsider, you essentially argued the district court got it wrong, basically. Is that right? Yes, Your Honor. As opposed to saying, you should reconsider it. Here's a new proposed amended complaint that fixes this pleading issue, and on that ground, you should reconsider. That's not what you argued. That is true, Your Honor, although we identified the incorrect assumption that was made in the complaint that was denied by the nurses in their answer. I believe that's at the record at 277. So, again, on the pleadings, I don't believe that the district court should have said that the nurse saw Ms. Short before Sergeant Morgan. And, again, Sergeant Morgan has admitted – again, I think it's important to consider all of this evidence that we have now. But that's literally what Rule 12 is about, is that we don't consider all this evidence that we now have. We read the complaint, and we read the answer, right? That's true, Your Honor, but in this case, again, the pleadings were not accurate, and they were denied by at least one defendant. And the sheriffs obviously knew that there was no nurse at the jail from 7 p.m. to 7 a.m., so they knew there wasn't a nurse there at midnight also when they filed their answer. And Sergeant Morgan, in her declaration at 727, said as much in the summary judgment proceedings. So, yes, Your Honor, it was possible. I would suggest that the motion to reconsider did everything that a Rule 15 motion to amend would have done under these circumstances. So it somewhat collapsed into itself in that regard. But, if I may, why the court should consider Kingsley in this case? Again, it's been bounced around. You look at the Dilworth case. That was decided in 2016 by this court. It was a conditions of confinement and an excessive force case in a jail setting. On the conditions of confinement, this court applied the Belle v. Wolfish Supreme Court case from 1979, I believe, and also mentioned Kingsley from 2015 to say that when you're dealing with a pretrial detainee, you're dealing with the 14th Amendment, not the 8th Amendment. So 8th Amendment is prisoners. That's cruel and unusual punishment. You have to look inside the mind of the officer, the government official, and see if that officer is acting with some malicious purpose or is punishing too much because that official can punish some, but it can't be too much. And that's why you have to know what's going on in that officer's mind. But when you're dealing with a pretrial detainee, as was stated in Belle a long time ago and then recently in Kingsley, you cannot punish a pretrial detainee for any reason. So, again, that was something that this court said in Dilworth. And then we've had several deliberate indifference to serious medical need cases for pretrial detainees. You've got Mickelson, Moss, and Mays, all from 2021. And none of them had to address Kingsley because it wasn't relevant for different reasons. In Mickelson, that was a pro se claim by a detainee against a police officer, not the jailers. And the pretrial detainee said the police put me in the wrong place in the jail, but the police don't run jails. So you don't have to get to Kingsley to think about objective tests there. With the Moss case, the inmate said, I didn't get my medicine for some unforeseen, not visible malady for a long time. It was too long, and that was a violation. But the court found that there's an awareness component. And I'd like to just, if I may, suggest what I think the test should be going forward. And I think you can see this in some of the sister circuits that have actually extended the Kingsley case to a pretrial detainee civil rights claim like this. Specifically in the Ninth Circuit, the Sixth Circuit, Brawner, that's a very good case from 2020. And it addresses and refutes the Strain v. Regalado case from the Tenth Circuit. And really, there's only one circuit case going the other direction, saying that circuits should not extend the Kingsley case in any substance. And that's the strain case from the Tenth Circuit in 2020. Brawner does a good job of explaining why the Sixth Circuit wasn't going to follow the strains precedent. And then there's also the Seventh Circuit and the Second Circuit. So all these other circuits have applied it in this context. And if we just keep leaving it undecided here, then it's a thing that can slip past a practitioner. Both the plaintiff, the defendant, neither brought it up in this case. The district court didn't bring it up at all in this case. Why isn't that an argument that we shouldn't do it? Well, because, Your Honor, I believe if the Supreme Court is to be given credence on its distinction between the Eighth Amendment cruel and unusual punishment for a prisoner versus the Due Process Clause, no punishment for a pretrial detainee, this court should speak with clarity on whether it applies or not, whether it's an objective test under Kingsley going forward. It strikes me that there are two separate questions. Question one is, in light of Kingsley, if this court were to decide the issue in the first instance, would we say there's a subjective requirement at all? But, of course, we have already decided that question. We said there is. So now it strikes me there are two separate questions that you're sort of mushing together. One, how would we decide this issue in light of Kingsley if we, the Fourth Circuit, had never decided this issue? And two, how do we decide this issue in light of the fact that we have literally said the exact opposite of what you're arguing? And so we recently, in a case called Carrera, said the question is not how we would decide things in light of that Supreme Court decision if we were deciding it today. It's whether our previous holdings, which are absolutely binding on us normally, have been abrogated because they are, quote, this is the language from Carrera, impossible to reconcile with the intervening Supreme Court authority. So I got cards on the table. I actually think if we hadn't decided this issue, you're probably right. It's not, though, clear to me that it's impossible to reconcile our previous decisions with Kingsley given that Kingsley doesn't address this actual question. And with all due respect to Justice Breyer, I read Kingsley, and there's language in Kingsley that suggests we should go the other way. And there's language in Kingsley that suggests we can keep on trucking, doing what we're doing. So why don't we just say it's not impossible to reconcile and we keep our existing rule? Your Honor, I would suggest that Kingsley is broad. It talks about government action, not just excessive force, and it speaks very clearly as to— Twice, by my count. But every actual statement of the holding is framed in terms of excessive force. Every single time the court says what they're holding, they say excessive force. On that particular fact pattern, yes, Your Honor. But it also borrowed heavily or relied heavily on the Belle v. Wolfish case, which was a conditions of confinement case. Totally fair. Now my response to that is it also relies heavily on Graham v. Conner, which is a Fourth Amendment case. And everybody knows he used the objective standard under the Fourth Amendment. Well, if that's true, Your Honor, then I believe that this court needs to speak as to pretrial detainees and clarify that everybody should know— use the objective standard with pretrial detainees, whether they're being arrested out in the wild or they've been arrested but they're not convicted. They still have that same Fourteenth Amendment due process, right? And it's very different. The Kingsley court made clear it's very different than the Eighth Amendment punishment standard. And you don't need to— Can I go back? Can we just go back before Kingsley? When I look at the case history of how we went from Farmer in 1994 to the first published Fourth Circuit case in 2001, which is— Gordon v. Kidd, I believe, Your Honor. Maybe you're right, but I have Young v. City of Mount Rainier. Yes, Your Honor. Over that period, there are a handful of unpublished decisions that just without any analysis adopted or imputed what Farmer held as to Eighth Amendment claims, objective and subjective, imputed that to Fourteenth Amendment claims without any analysis. There's a per curiam opinion. There's an unpublished opinion from—those are in the early 90s. And then we get to 2001, and that case relies on those unpublished cases without any sort of here's how we got from Farmer to where we are now. So Kingsley, in my view, put a spotlight on an issue that had yet to be identified by the Fourth Circuit. Your Honor, I'm out of time. May I respond, please? Please. I think that's entirely accurate and fair, Your Honor. And, again, Kingsley identified this sort of go along, get along on the Eighth Amendment piggyback that courts had been writing for pretrial detainees. It just treated them the same as prisoners, I don't think, with much cognition or analysis. And I really think that's where it brings us back to that. And it's not just Kingsley, Your Honor. Kingsley built off of that Belvey-Wolfish case from 1979, and that's what's so important that I think the Supreme Court was doing it as well in some way. But when you look at that Dilworth case in 2016 where this court, for perhaps the first time, really focused on the difference there, it found that it was an objective test for a 14th Amendment pretrial—I'm sorry, a pretrial detainee applying the 14th Amendment test. And Dilworth was conditions of confinement? Well, it was—I'm sorry, I believe it may have been a failure to protect the claim, Your Honor, against the warden, but also an excessive force case against the actual officers who beat the pretrial detainee up. And the court reversed and said there is an objective standard for the failure to protect, I believe, by the warden and remanded for application of Kingsley with the new standard—well, not the new, but the clarified standard that the Supreme Court had set forth in Kingsley. So no further questions, Your Honor. Thank you. Thank you, Mr. Boyle. Mr. Morgan. May it please the Court, I'm Jim Morgan. I represent the appellees, the defendants, in this case. The claim before this Court is primarily a claim against Defendant Morgan, no relation, in her individual capacity under Section 1983 for deliberate indifference to serious medical needs. The district court, following the well-established longstanding precedent in this circuit, applied the deliberate indifference test, which has objective and subjective components. And for the ease and clarification, I'll just use the phrase deliberate indifference to mean that test. And the court—the district court granted the defendants 12B6—excuse me, 12C motion. And as this Court has correctly noted, at a Rule 12C level, the courts only focus on the pleadings, not on any documents that came thereafter. It does seem like a weird way to run a railroad, to a degree, though, right? Like, the whole idea of a motion to dismiss is that we don't engage in a year-long discovery process. Well, I can tell you we spent a lot of time on our summary judgment briefs, and we're surprised that the 12C motion was granted thereafter, but that's where we are. And I think the court—the district court had absolute discretion to do that, do what it did, and that's where we find ourselves. The question is, did the district court correctly grant the defendants 12C motion? So let me ask you what I think is the easiest way to resolve this case. The district court ruled before Stevens, right? Yes. Why isn't virtually everything we said in Stevens applicable in this case? So one of the things we pointed out in Stevens, for example, to pick up on something that Judge Gregory mentioned earlier, as a person who's on the panel in Stevens, I remember having this discussion in Stevens, like, you cite all these cases, but all these cases you cite are summary judgment cases. None of them are pleading cases. And then in Stevens, the district court dismisses one of these claims based on the pleadings. This court says, that is not how pleading works. So, like, I guess basically, why isn't the easiest way to resolve this case, or why shouldn't I conclude the district court was wrong, see this court's opinion in Stevens? Your Honor, in my opinion, the Stevens case has no bearing on this case. None? Because the Stevens case, the facts in Stevens are completely, totally different, have no, don't bear any resemblance to the facts in this case. I will say that you're right. Under Iqbal Tuamli, there is such a thing as dismissing on the pleadings, but I understand that this court has been reluctant to uphold 12B6 rulings in favor of defendants. On deliberate indifference questions. In this case, here are some of the key factual distinctions. In Stevens, the only defendants, the only individual defendants that were discussed by the Fourth Circuit panel were medical care professionals. In this case, the only defendant left is a non-medical layperson, not a medical professional. And as this court knows, non-medical laypersons are entitled to rely on medical care professionals' medical judgments. Shaka v. Smith and other cases say that. And for that reason, Stevens v. Holler doesn't have any relation to this case factually. I would also mention, since we've talked about circuit decisions that have adopted the Kingsley standard, I don't think this court should even consider that. But if they did, I would point out that in Miranda v. County of Lake, the Seventh Circuit opinion adopting the Kingsley objective standard, the Seventh Circuit also said, but the laypeople in this case still get entitled, are still entitled to be dismissed from the case because non-medical laypersons are entitled to rely on the medical professional judgment of medical care professionals. But what if there's a policy in place, a suicide risk policy, that has to be administered by a non-medical professional by virtue of how the jail operates? And that person here, Sergeant Morgan, similar to Nurse Holler in the Stevens case, allegedly did not comply with that policy, filled out the form wrong or misinterpreted the form and did not refer the person to medical care as Nurse Holler did in Stevens. In this case, the pleadings say that Nurse Barnes, shortly after the decedent entered the jail, a nurse assessed the decedent, Miss Short, knew that she had attempted suicide recently and knew that she was a drug addict. Nonetheless, the medical care professional decided she was not suicidal, and two other medical care providers after that also made that same assessment. It's in our brief, but the suicide policy, it covers potentially suicidal people. It tells laypeople, the jail folks who talk to the, in this case, the decedent, to look for factors which may indicate an inmate is potentially suicidal, and then it directs an officer what to do if they discover an inmate who is identified as a suicide risk. In this case, the nurse had already decided the inmate was not suicidal. So Sergeant Morgan was absolved of her responsibilities to conduct the suicide assessment risk properly? She may have been negligent, Your Honor, but as you know, the Due Process Clause does not, negligent conduct does not violate the Due Process Clause. That's one difference, but I would also say that under Shocker v. Smith, the answer to your question is yes. You're saying it was plead, that she made a conclusion that was not required? You said the pleading stated that the nurse made a decision that a populated cell was not required? Is that what you're saying?  Would that have to be the conclusion in terms of concluding that she made that decision if you're relying, saying that you relied on that decision? The populated cell part of it, Your Honor. The nurse actually, there's an allegation in the complaint that the nurse assigned her to an isolated cell because of draining open sores. That was in the complaint. I didn't say anything about the jail, the layperson making a decision about where to put her. That was a decision according to the complaint that was made by the nurse. That's what I'm saying. What was the pleading that that conclusion was made by the nurse? That conclusion, that medical conclusion was made by the nurse. The nurse didn't make a medical conclusion. Are you saying, where does it say she relied? I don't think it's specifically in there. Right? Right. So what pleading said that that conclusion was made by the nurse, that she was not required to be in a populated cell? What pleading is that? I know you're familiar with that. The populated cell part of it, I don't believe that. I think the only thing in the pleadings about a populated cell was that the nurse assigned her to an isolated cell. I don't think there's anything in the complaint that talks about the non-medical people talking about isolated cells. I could be wrong about that. That's my memory right now. The medical person, your argument is that Officer Morgan is absolved of all responsibility because a medical professional made a decision that they relied upon, right? She relied upon it. Yes, that she was not suicidal, that Ms. Short was not suicidal, yes. But the point is that she had evidence that she was suicidal recently, correct? Yes. And the nurse, the medical care professionals knew that. That's the whole point. That's why you have medical care professionals make these assessments. They assess her as not being suicidal. And at Joint Appendix 155, it said, Nurse Barnes authorized Ms. Short could be moved to female isolation because of draining sores. That's what I'm talking about when I say it's in the complaint, that the nurse authorized her to go to an isolation cell. Was that your question, Judge Gregory? Yeah. And that was pled by the plaintiffs. Yeah, that's in the plaintiffs. I'm in the complaint, paragraph 73, Joint Appendix 155. Of course, now we know that's not true in terms of timing of that. You're talking about in terms of who saw her first? Right. Yeah, Judge Tilley in his motion for reconsideration addressed the timing and said that doesn't make any difference. And I agree with that, Your Honor. But for purposes of this argument, I would suggest that I'm bound and this court is bound by the pleading, which is what the plaintiff alleged in the complaint. And what was alleged in the complaint is that Ms. Short came to the jail, and shortly thereafter she was assessed by a medical care professional. Well, what if we hypothetically agree with you that the pleading as it stands is insufficient under the current Fourth Circuit law setting aside Kingsley? What's the remedy? Is the remedy, from your perspective, just affirm the case is over? Yes. Do we have to consider the fact that there is evidence that may contradict the complaint and, in fact, may favor the plaintiff? As I understand the case law under Rule 12c motion, the district court and this court consider only what's in the pleadings. I understand the Rule 12c standard. I'm talking about the reality. The reality is discovery ensued while the 12c motion was pending. Discovery apparently was obtained that is now probably more favorable to the plaintiff. Plaintiff did not move to amend the complaint based on the evidence, which often happens. So are we just supposed to ignore the subsequently developed evidence? Yes. It's a Rule 12c motion. That's why we're here. But in granting the ultimate relief, do we then remand and allow the plaintiff to amend? At the procedural posture of this case, we filed our briefs two and a half years ago. So the correct remedy, with all due respect to this court, you'll ultimately decide that, but I think you should affirm the Rule 12c motion and affirm the dismissal of the case with prejudice. I mean, they already settled with the medical care providers. They're not in the case anymore. We just have the jail. And for purposes of this appeal, it's just Defendant Morgan. Defendant Morgan is entitled to dismissal under Rule 12c, both under the pleadings and under and you could even consider qualified immunity if you decide to change the rule, Judge Morgan. Defendant Morgan would still be entitled to dismissal based on qualified immunity because Shaka versus Smith entitles, if the jail provides medical care providers and the medical care providers say, well, she's not suicidal, what is it that the defendant lay people are supposed to do? What have they done? What inaction did they take that under any standard could possibly have violated the Constitution? The answer is none, with all due respect. But in this case, if you apply the test that's been the test in this circuit for decades now, did Ms. Short have an objectively serious medical need? The answer to that is no under the pleadings because the pleadings show that the nurses and the physician's assistant said she wasn't suicidal. You can't look at somebody and tell if they're suicidal. There was no diagnosis she was suicidal. Therefore, there's no objectively serious medical need. You can't say, yes, medical care providers said she wasn't suicidal, but still there was an objectively serious medical need because she was suicidal. I don't see how you can say that. And second, did Sergeant Morgan subjectively recognize, actually know, that Ms. Short had a serious medical condition? Well, the facts in the complaint, it's never alleged that she knew that. The plaintiff doesn't allege that Defendant Morgan knew that at all. In fact, if you look at Joint Appendix page 222, there's a questionnaire attached. The questionnaire says, does the inmate exhibit any signs that suggest the risk of suicide? Sergeant Morgan answered no. That's in the pleading. That's evidence that she did not subjectively know that Defendant Short, excuse me, the decedent Short was suicidal. And then, of course, as to the third prong, was Sergeant Morgan, did she act in a way that she knew to be contrary to her duty? There's really no allegation to that. Plus, you throw in Shocker versus Smith, you can't have someone acting in a way that was contrary to their duty if all they're doing is following medical directives. You just can't. And I would say this, if this court were to consider the Kingsley standard and adopt an objective standard, I don't think you should because it amounts to a negligent standard for medical cases. But if you did, then Sergeant Morgan under the objective standard would be entitled to dismissal and qualified immunity because objectively it is reasonable for a detention officer to rely on the assessment of medical professionals. And that's what the pleadings suggest say happened in this case. That's why the medical care professionals are out of the case. That's why the plaintiffs settled with them. I'll also say one more thing. I don't want to belabor the point, but I think what we really have here is allegations of negligence against Defendant Morgan. That's what we've got. To answer your question, Judge Boardman, that I don't think I ever actually answered, what about the fact that she may have negligently not followed everything on the form? She may not have done everything the form suggested she should do. I don't think I said negligently. No, you didn't. I threw that in. You're right. You said she didn't follow it. What I would say to you is there are several cases, including Altman versus Highpoint, a case which I argued in this court about 20 years ago, in which the court held, this court held, the Fourth Circuit held, that failure to follow a local policy is not a constitutional standard, which, of course, makes perfect sense. A local policy is just a local policy. It could either be below the constitutional standard or it could be above it, but it's not the constitutional standard. So the fact that Defendant Morgan may have or did not follow the form exactly, that does not suggest a due process violation. You said that adopting an objective, solely objective standard for 14th Amendment claims such as this one would amount to a negligent standard. Yes. When I read the Gordon versus Kidd opinion, it's a 1992 Fourth Circuit case, it predates Farmer. My understanding is that was the standard back then for 14th Amendment claims for deliberate indifference of serious medical needs, and that was an objective standard. In fact, I'm reading it here. It says, the key to deliberate indifference in a prison suicide case is whether the That reads to me as not negligence. Why shouldn't we go back to that standard? Well, the first response is that at least three decades of Fourth Circuit panel decisions hold that the deliberate indifference standard, which includes objective and subjective standards, is the standard in this circuit. I understand that completely, and I really don't mean any disrespect to those prior holdings, but I've taken a look at why they made that decision, and I'm not sure why other than just to apply Farmer after it came down. Well, I think this is my opinion. I mean, I looked at the Strain decision. It makes sense to me, the Tenth Circuit decision in Strain, and I looked at the amicus brief for the few days that I had it in my hands, and I've read the plaintiff's brief, and it says things like an intentional inaction, you look to see whether there's an intentional or reckless inaction, failure to act, and then you ask whether it was reasonable. Well, number one, you can't decide if it was intentional or reckless without, and then it says don't look at what they knew or thought. If you don't look at what a person knew or thought, how do you know if it was intentional or reckless? It's circular. And it comes down to was it objectively reasonable? Did this person fail to do something when a reasonable person would have done it? That's what I learned in law school is negligence. That's all that is. Why shouldn't we go back to that standard? I think at some point the Supreme Court has made it abundantly clear negligence does not state a cause of action under the Due Process Clause. Daniels versus Williams, I think, maybe some others. But if it's just negligence, it can't possibly be a due process violation. And I mention this because at page four of Ms. Short's reply brief, talking about the actions of Defendant Morgan and the nurse, she says both of their separate negligence caused this problem. I would say that's a recognition that Defendant Morgan's actions were in most negligence. It's a judicial admission, certainly, page four of the reply brief. Both of their separate negligence caused this problem. Negligence simply does not state a cause of action under the Due Process Clause. Your Honor, I appreciate your time. It's always a pleasure and an honor to be here. If you have any questions, I'm happy to address them. Otherwise, we'll stand on our briefs. Thank you very much. Appreciate it. Mr. Boyle. Thank you, Your Honor. First, Sergeant Morgan did not rely on any action by a nurse, and there's no allegation in the complaint that she did, I don't believe. And even if she had, under both the IKO v. Shreve and the Stevens case, later action by a medical professional does not necessarily absolve or exonerate earlier constitutional violations by a government official. This is, I think, well-founded that the court asked about not taking the facts in the light most favorable to the plaintiff. Again, the allegations in the complaint do not suggest that Sergeant Morgan ever relied on anything from the nurse. And I'd like to clear up from the complaint at the appendix 155, paragraph 73, the amended complaint, actually what it says, Your Honor, is at some point on August 23, 2016, Nurse Barnes authorized that Victoria could be moved to female isolation, allegedly due to having open draining sores all over her body. This was not an allegation that Sergeant Morgan relied on what the nurse said, if the nurse actually moved Ms. Short to isolation. And if you look at the appendix again at page 280 with the nurse and the medical provider defendant's answer, they denied paragraph 73. So, again, you have an allegation in the complaint, but it's denied by the health care provider. And something that I started before and didn't finish was what I suggest the standard should be under Kingsley for this court, a four-part test. Number one, the pretrial detainee has an object of serious medical need. And in this case, the Sergeant Morgan may say, well, I didn't recognize that she had a suicide risk. But there's very clearly read in the light most favorable to the plaintiff. She wrote down things on two pieces of paper that when you compare them to the sheriff's policy 4.10 that she was supposed to know and we allege she did know about very clearly showed that she had to know. And any layperson, any normal non-medical provider can read that. In fact, it's written for non-medical people like detention officers, like Sergeant Morgan. Number two, there's an awareness by the officer of that serious medical need. And, again, that gets through. She wrote it down twice. She was clearly aware that Ms. Short had recently tried to commit suicide and was going through withdrawals, was arrested for having a fight with her husband, all of these constellation of risk factors. She was definitely aware. And that's the subjective component there. You do have a subjective component still here. You have to have awareness. So if Ms. Short had come to the jail and not said anything about a recent suicide attempt and not said I use drugs and Sergeant Morgan was unaware of this sort of latent, hidden potential problem, this serious medical need, then we couldn't and shouldn't hold her responsible for that because she wasn't aware. And then the third part is where Kingsley comes in. You either have that officer intentionally ignore the problem, and you can have that. They can't admit it. So it's not like you don't have to have a confession. It's just in the absence of such a confession, if a reasonable officer knew or should have known what the reasonable steps to deal with that serious medical need are, then they have to do it. And a jury gets to decide whether that was reasonable or not. Again, you look at the policy. There was a lot of steps that should and could have happened. Your Honor, I'm out of time. I'll just finish very briefly. Thank you, Your Honor. And then number four, that that pretrial detainee suffers harm based on the improper, unconstitutional action in number three. And with that, we ask that the court reverse under either the Kingsley objective test or Stevens and remand for this case to proceed to summary judgment or trial. Thank you very much, Your Honor. Thank you, counsel. Thank you both for your arguments. We'll ask the clerk to adjourn the court until, I guess, not adjourn, but I guess we'll be adjourned for the day anyway. And then we'll come to agreed counsel. This honorable court stands adjourned until tomorrow morning. Thank God save the United States and this honorable court.
judges: Roger L. Gregory, Toby J. Heytens, Deborah Lynn Boardman